**COMMONWEALTH OF
PENNSYLVANIA,
Appellant,**

v.

**James DUNLAVEY, Appellee.**

Superior Court of Pennsylvania.

Argued April 3, 2002.

Filed July 30, 2002.

**20.** Given our resolution of the contract issue, we need not reach Schnader's remaining is-   sues on appeal.

Stephen B. Harris, Asst. Dist. Atty., and Diane E. Gibbons, Asst. Dist. Atty., Doylestown, for Commonwealth, appellant.

James Dunlavey, appellant, pro se.

Timothy I. Mark, Camp Hill, amicus curiae.

Before: McEWEN, P.J.E., STEVENS, and OLSZEWSKI, JJ.

STEVENS, J.

¶ 1 This is a consolidation of two appeals arising from two orders entered in the Court of Common Pleas of Bucks County. The first order modified the sentence of Appellee, James Dunlavey, by changing his sentence of seven to twenty years in prison to a sentence of fifteen years probation, and the second order granted Appellee bail on appeal. We reverse both orders of the lower court.

¶ 2 On November 14, 1995, Appellee was convicted of the following crimes: Aggravated Assault,[1] Simple Assault,[2] Recklessly Endangering Another Person,[3] and Disorderly Conduct.[4] A seven to twenty year prison sentence to be served in a state correctional institution was imposed upon Appellee, who filed post-sentence motions which were denied. Appellee filed a notice of appeal to this Court, and we affirmed the judgment of sentence on August 19, 1997. A Petition for Allowance of Appeal was filed and denied by the Supreme Court of Pennsylvania. Appellee filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, on October 2, 1998. The P.C.R.A. court denied the motion and this Court affirmed the denial of Appellee's PCRA petition. Appellee filed a Petition for Allowance of appeal to the Pennsylvania Supreme Court, which is currently pending.

¶ 3 On September 14, 1999, Appellee filed a petition to modify his sentence to facilitate medical treatment pursuant to 61 P.S. § 81. A hearing was held, and the motion was denied. On November 16, 2000, another petition for modification was presented to the court. A hearing was held on April 23, 2001, and based on the evidence from the second hearing, the trial court ordered that Appellee's sentence should be modified from seven to twenty years in prison to a sentence of fifteen years probation. The Commonwealth requested that Appellee's release from prison be stayed pending this appeal, the lower court denied that request and further ordered immediate bail be granted. The Commonwealth appealed both orders to this court. All Pa.R.A.P.1925 requirements have been met.

¶ 4 The lower court based its modification of Appellee's sentence on section 61 P.S. § 81, which allows for the temporary removal from prison of a seriously ill inmate. Specifically, the section reads:

Whenever any convict or person is confined in any jail, workhouse, reformatory, or reform or industrial school, penitentiary, prison, house of correction or

---

1. 18 Pa.C.S.A. § 2702.

2. 18 Pa.C.S.A. § 2701.

3. 18 Pa.C.S.A. § 2705.

4. 18 Pa.C.S.A. § 5503.

any other penal institution, under conviction or sentence of a court, or is so confined while awaiting trial or confined for any other reason or purpose and it is shown to a court of record by due proof **that such convict or person is seriously ill, and that it is necessary that he or she be removed from such penal institution,** the court shall have power to modify its sentence, impose a suitable sentence, or modify the order of confinement for trial, as the case may be, and provide for the confinement or care of such convict or person in some other suitable institution where proper treatment may be administered. **Upon the recovery of such person, the court shall recommit him or her to the institution from which he or she was removed.**

61 P.S. § 81 (emphasis added).

■■■ ¶ 5 Appellate courts have found that the statute clearly applies only to those prisoners who become seriously ill while in prison and, for the benefit of the ill prisoner as well as the rest of the prison population, should be transferred temporarily to a more suitable institution where medical care can be administered properly. *Commonwealth v. Deaner,* 779 A.2d 578, 580 (Pa.Super.2001) (*citing Commonwealth v. Landi,* 280 Pa.Super. 134, 421 A.2d 442, 444 (1980)). Further, the prisoners must allege that it is necessary for them to leave prison because the prison is unable to provide adequate medical care, and the prisoners must return when their medical treatment is complete. *Id.* at 581.

¶ 6 We will review the lower court's order for an abuse of discretion and will only reverse where the trial court "misapplies the law, or its judgment is manifestly unreasonable, or the evidence of record

shows that [its] decision is a result of partiality, prejudice, bias, or ill will." *Holderman v. Hagner,* 760 A.2d 1189, 1192 (Pa.Super.2000). We find that the lower court has both misapplied the law and that its judgment is unreasonable.

■■ ¶ 7 In its 1925(a) opinion, the lower court indicated that: "Based upon the expanded medical testimony and records produced at the April 23, 2001 hearing, this court is now convinced that petitioner suffers from a 'serious illness' as defined in 61 P.S. § 81." This is a misapplication of the law. The mere fact that Appellee suffers from a 'serious illness' is not sufficient to allow relief under 61 P.S. § 81. Rather the requirement of the statute is a 'serious illness' **and** a showing that it is 'necessary' to leave the prison to receive medical care, either because the inmate's disease can not be treated in prison or as a means of quarantine. The correct standard to have been applied is whether an inmate who has become seriously ill while in prison should be temporarily released to receive the necessary medical treatment.

¶ 8 Appellee has not alleged that he has a disease that can not be treated in prison. The record shows that Appellee is suffering from many illnesses, including hepatitis C, an ankle spur, an eye socket infection from his glass eye, and facial cancer which has developed into necrosi, all of which are currently being successfully treated by the prison system. At the hearing, Appellee's dentist testified as to Appellee's medical condition.[5] He described the successful treatment of Appellee's cancer, which involved various operations and follow up care. The dentist informed the court that Appellee's cancer has been in remission for the last five

---

5. It appears that the dentist was called to testify because Appellee's cancer was of the     mouth region.

years. (N.T. 4/23/01 at 10, 18). The cross-examination did not reveal anything lacking from the prison system's treatment of this illness. Moreover, the dentist informed the court that Appellee was receiving treatment for his hepatitis C, which consisted of various prescription drugs. (N.T. 4/23/01 at 12). The dentist generally stated that Appellee's prison has been and is preparing to handle any and all of Appellee's medical conditions. (N.T. 4/23/01 at 13). Thus, Appellee does not have a disease for which the prison medical system is unable to provide him with adequate medical care nor did Appellee allege that he needs to be quarantined for the health of the other inmates. Therefore, we find that the lower court abused its discretion in allowing Appellee relief under 61 P.S. § 81.[6]

¶ 9 We now turn to the Commonwealth's allegation the lower court erred in setting bail for Appellee after Appellee's direct appeal rights had lapsed. The Pennsylvania Rules of Appellate Procedure section 1762 provides that an application for release pending appeal shall be governed by the Rules of Criminal Procedure (Pa.R.Crim.P.). Pa.R.Crim.P. 534 and its comment provide:

Unless bail is revoked, a bail bond shall be valid until the full and final disposition of the case, including all avenues of direct appeal to the Supreme Court of Pennsylvania.

### Comment

The intent of this rule is to continue the validity of the bail bond through all avenues of direct appeal in the state courts, but to exclude state post-conviction collateral proceedings, federal appeals and post conviction *habeas corpus* proceedings, or any other collateral attacks.

¶ 10 Therefore, from this section, a lower court's power to set bail is valid until the defendant's direct appeal rights are exhausted. "The intent of this rule is to continue the validity of the bail bond through all avenues of direct appeal in state courts, but to exclude any post-conviction collateral proceedings." *Commonwealth v. McMaster*, 730 A.2d 524, 527 (Pa.Super.1999). In this case, Appellee's direct appeal rights ended when Appellee's Petition for Allowance of Appeal was denied on March 9, 1998. Thus, the court erred as it set bail after Appellee's direct appeal rights had expired. The lower court had no authority to set bail and should not have done so.

¶ 11 Reversed; Remanded; Jurisdiction Relinquished.

¶ 12 McEWEN, P.J.E., joins in part and files a concurring statement.

McEWEN, P.J.E., Concurring Statement.

¶ 1 The author of the majority view has in his usual fashion provided a sound rationale for the decision of this Court and does so based upon the prevailing principles of law. I write solely to commend the trial judge, who has so diligently and insightfully served the justice system as prosecutor and judge for almost four decades. When, after appellee had served the greater part of the seven-year minimum sentence the trial judge had imposed five years earlier, the judge implemented the timeless adage that the quality of mercy be not strained, an admonition which the prosecution has subjected to its unsparing perception of the letter of the law. The prosecution having elected by this appeal to thwart the

---

6. We further find the trial court abused its discretion since it ordered Appellee to be permanently released, while 61 P.S. § 81 only provides for a temporary release to seek medical treatment until recovery occurs.

compassionate disposition which the trial court provided, this Court is powerless to exercise discretion but is bound, under the law, to reverse the trial court. Thus it is that I join in the opinion of the majority.