## Commonwealth v. Wallace

C.P. of Lawrence County, nos. 1006, 1053, 1066, 1093, 1095, 1102, 1106, 1107, 1108, 1109, 1110, 1111, 1112 of 2004, 107, 108 and 119 of 2005.

*Kathleen Fee-Baird, assistant district attorney,* for Commonwealth.

*Darrell Haeberle, assistant public defender,* and *Dennis A. Elisco, assistant public defender,* for defendant.

*Jeffrey Palladino,* for intervenor.

MOTTO, *P.J.,* January 27, 2010—Before the court for disposition is the defendant's motion to modify sentence pursuant to 61 P.S. §81 due to defendant's medical condition, following a rehearing granted thereon upon motion of the intervenor, Pennsylvania Department of Corrections, for reconsideration of this court's prior order dated April 17, 2009. The prior order had granted

the defendant's motion and directed the defendant's release to a skilled nursing facility. The dispositive issue is whether the current facility in which defendant is incarcerated lacks the ability or resources to treat him for his diagnosis of probable multiple sclerosis. Because the court finds that, based upon the current state of the record, defendant is receiving appropriate care and treatment for his medical condition, the court is therefore compelled to deny the defendant's motion.

## HISTORY OF THE CASE

These proceedings originated with the defendant's pro se filing of a modification of sentence nunc pro tunc for medical reasons pursuant to 61 P.S. §81. Upon the filing of such motion, this court appointed the public defender to represent the defendant and scheduled a hearing on the defendant's application for modification of sentence. At the hearing on March 23, 2009, the Commonwealth appeared through the district attorney; however, the Department was not represented at such hearing. The March 23, 2009 hearing consisted of extensive testimony from the defendant and introduction of medical records. At such hearing, the Commonwealth made no request to present the position of the Department. Based upon the evidence presented at the March 23, 2009 hearing, the court found that the defendant was seriously ill and that his current facility lacked the resources to treat him and issued an order pursuant to 61 P.S. §81 granting the modification of sentence and directing that he be transferred to a skilled nursing facility for treatment of his current medical condition, with the defendant to be returned to the prison upon restoration of his health.

Subsequent to the issuance of the April 17, 2009 order granting the defendant's petition, the Department filed a petition to intervene, a motion for stay of the April 17, 2009 order and a motion for reconsideration of the April 17, 2009 order.

By order dated May 22, 2009, the court granted the intervenor's motion for stay and scheduled a hearing on the Department's petition to intervene and for reconsideration on the basis that the Department had a substantial interest in the subject matter of the litigation; granted reconsideration of the April 17, 2009 order, since the position and evidence of the Department had not been considered in the prior proceedings; found that 61 P.S. §81 continued to apply, although it had been repealed, since the original request for modification had been filed while that statute remained in effect; and scheduled a full hearing on the defendant's motion for modification of sentence nunc pro tunc for medical reasons. At this hearing the Department presented substantial evidence regarding the diagnosis, care and treatment of the defendant's medical condition.

## DISCUSSION

Based upon the evidence provided by the defendant at the initial hearing in which the Department did not participate, the court found that the defendant was seriously ill and that it was necessary that he be removed from SCI Highlands because his medical condition could not be treated in prison. The court found the defendant was partially paralyzed, going blind, could not urinate, lost control of his bowel movements and his conditions

continued to deteriorate. The defendant was in need of a neurologist to be involved in the diagnosis and development of a treatment plan for multiple sclerosis. The court further found that a neurologist must be involved in a diagnosis and treatment plan for this kind of disease. Defendant was in need of diagnostic workups including a spinal tap or imaging of the spinal cord and other studies to establish the diagnosis and a treatment plan. The defendant was not provided with an examination by a neurologist nor any development of a treatment plan, while his condition continued to deteriorate. (See opinion dated April 17, 2009 pp. 3, 4, 6 and 7.)

The evidence presented at the subsequent hearing after the intervention of the Department demonstrates that the deficiencies in the treatment which the court previously found to exist have been addressed by the prison. The court now has the benefit of the testimony of the prison medical personnel who are responsible for the proper medical treatment of the defendant as to the care that has been and is now being provided to the defendant. That care has been principally outlined in the testimony of Dr. Jawal Salameh M.D., the medical director for SCI Laurel Highlands.

Defendant was transferred to SCI Laurel Highlands from SCI Frackville in November of 2007. At the inception of defendant's intake, medical personnel at SCI Laurel Highlands were aware of defendant's diagnosis of multiple sclerosis. His records showed that he began to have problems with his eyes in 2006 and was evaluated at SCI Frackville by an ophthalmologist, Dr. Goldberg, who suspected multiple sclerosis. Dr. Salameh

ordered an MRI and referred defendant to Dr. Feinberg, a neurologist, who saw defendant in October of 2006. Dr. Feinberg reviewed an abnormal MRI that showed increased intensity in the white matter, which is non-specific but consistent with multiple sclerosis. With the MRI finding and noting the presence of optic neuritis, Dr. Feinberg made a finding of probable multiple sclerosis.

Defendant was seen by the neurologist, Dr. Feinberg, in a follow-up in November 2006. Dr. Feinberg prescribed Avonex for defendant, did not order any other testing and directed follow-up as needed.

Based upon Dr. Feinberg's examinations, Dr. Salameh ordered a continuation of Dr. Feinberg's recommendation, continuing defendant on Avonex, a standard treatment for multiple sclerosis, and assigned defendant to physical therapy, directed that he see an optometrist and ophthalmologist to follow up on the treatment for optic neuritis, and ordered a wheelchair for defendant for use as needed. Defendant was then stable until he began to complain of difficulties in July of 2008. He began to have a problem with urination, for which he was examined by a urologist and was given medications to help with urination.

In April of 2009, defendant had an episode of dizziness and chest pain and was sent to the Sommerset Hospital emergency room for evaluation. Defendant was admitted to the hospital, and although the primary concern was that defendant was suffering from coronary artery disease, the opportunity was taken during that admission to

have the defendant evaluated by a neurologist, Dr. Catalano.

Dr. Catalano evaluated the defendant and agreed with the diagnosis of probable multiple sclerosis and directed a series of MRIs be taken. The MRI results showed two lesions in the brain consistent with multiple sclerosis. Dr. Catalano then ordered a spinal tap to confirm the diagnosis. The defendant declined all additional tests ordered by the neurologist, Dr. Catalano, including the spinal tap. However, based upon the MRIs, which included an MRI of the brain, of the cervical spine and an MRA to look at the blood vessels, which disclosed the two lesions, Dr. Salameh concluded that the diagnosis of multiple sclerosis was more than possible or probable multiple sclerosis. Now knowing that the defendant has two lesions together with optic neuritis, and considering the clinical picture and defendant's neurogenic bladder, the diagnosis became more likely multiple sclerosis. The likelihood of multiple sclerosis was further corroborated by a May 2009 follow-up by the ophthalmologist who found swelling of the optic disk. Dr. Salameh received a report from the neurologist at Sommerset Hospital, Dr. Catalano, dated April 6, 2009. The report recommends the performing of a spinal tap, MRI and evoke potentials, and to stop the steroid. Dr. Salameh followed the recommendations and the MRI was done at Sommerset Hospital. Defendant initially refused the spinal tap and the evoke potential, but these tests were eventually done. Dr. Salameh then scheduled a consultation with Northshore Neuroscientists. The examination with Northshore Neuroscientists occurred on July 10, 2009. Dr. Grazioli was

the neurologist with Northshore who examined the defendant and reviewed the records. Dr. Grazioli made a diagnosis of provisional history of multiple sclerosis; she requested neurological records, MRI films, and visual evoke potential, MRI of the thoracic spine, spinal tap and a battery of blood tests. Essentially Dr. Grazioli requested almost every possible test that could be done to exclude any connective tissue disease, infection process, cancer or any immune problem. Dr. Salameh followed all of the directives of Dr. Grazioli and all of those tests were ordered and done. The spinal tap was performed August 7, 2009. The evoke potential was done September 9, 2009. The blood tests were all done within a day or two after the consultation. A thoracic spine MRI was done in August 2009. All of these test results were accumulated and sent to Northshore Neuroscientists. A follow-up consultation was done September 10, 2009.

On September 10, 2009, Dr. Grazioli, after again evaluating the defendant and all relevant records and tests, agreed that the diagnosis is probable multiple sclerosis. The doctor found all other testing was negative for any other problem which might account for defendant's symptomatology. Dr. Grazioli ordered interferon antibody testing to determine whether the Avonex was working. Dr. Grazioli also started dfendant on IV steroid. Dr. Grazioli then scheduled the defendant for another follow-up in November or December of 2009.

Dr. Grazioli has further advised that if the result of the interferon antibody testing is positive in both parts of the test, then it will show that the defendant is resistant to the Avonex and the doctor would then like to switch the

defendant to the next generation medicine which is Co-paxone.

The court has previously determined that this case is controlled by 61 P.S. §81, which provided, prior to its amendment that became effective November 25, 2008, as follows:

"Whenever any convict or person is confined in any jail, workhouse, reformatory, or reform or industrial school, penitentiary, prison, house of correction or any other penal institution, under a conviction or a sentence of the court or so confined while awaiting trial or confined for any other reason or purpose and it is shown to a court of record by due proof that such convict or person is seriously ill, and that it is necessary that he or she be removed from such penal institution, the court shall have power to modify its sentence, impose a suitable sentence, or modify the order of confinement for trial, as the case may be, and provide for the confinement or care of such convict or person in some other suitable institution where proper treatment may be administered. Upon the recovery of such person, the court shall re-commit him or her to the institution from which he or she was removed."

As this court has previously stated in its opinion of April 17, 2009, the provisions of the foregoing statute is not subject to time constraints or limitations. *Commonwealth of Pennsylvania v. Kositi,* 880 A.2d 648 (Pa. Super. 2005). In order to be entitled to relief, the defendant must prove that he is seriously ill and that his current facility lacks the resources to treat him. *Kositi, supra; Commonwealth v. Dunlavey,* 805 A.2d 562, 564 (Pa. Super. 2002), *appeal denied,* 572 Pa. 698, 813 A.2d 837

(2002). The statute permits a change in the location of confinement but not the length of confinement. *Commonwealth v. Reefer,* 816 A.2d 1136, 1143 (Pa. Super. 2003), *appeal denied,* 574 Pa. 759, 831 A.2d 599 (2003).

The statute requires that a petitioner show by "due proof" that he is "seriously ill" and that "it is necessary that he be removed from such penal institution because the inmate's disease cannot be treated in prison." Complaints of inadequate medical care or about the quality of care received in the current facility does not establish a prima facie case relief under the statute. *Commonwealth v. Lightcap,* 806 A.2d 449 (Pa. Super. 2002); *Commonwealth v. Dunlavey, supra; Commonwealth v. Reefer, supra.*

The Department initially argued that Act 61 was amended effective November 25, 2008 and no longer provided authority for the court to render the relief granted because the amendment allows for relief only if the defendant is terminally ill. However, this court found and set forth in its order of September 14, 2009 that the amendment took effect only after these proceedings were instituted, although before the initial adjudication. In accordance with *Gallant v. Department of Environmental Resources,* 534 Pa. 17, 626 A.2d 496 (1993), a statute may be applied retroactively during the pendency of litigation if it involves a procedural change as opposed to a substantive change. A statute that effectuates a procedural change applies not only to "[l]itigation commenced after its passage but also to litigation existing at the time of passage. However, legislation which affects

rights will not be construed to be retroactive unless it is declared so in the Act." *Gallant,* 534 Pa. at 21, 626 A.2d at 497, citing *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa. Commw. 176, 183, 305 A.2d 757, 761 (1973), quoting *Kuca v. Lehigh Valley Coal Co.,* 268 Pa. 163, 166, 110 A.2d 731, 732 (1920). The amendment referred to by the Department is not merely a procedural change but directly affects substantive rights as it changes the right of modification of sentence from a standard or a change in place of confinement may be directed where a prisoner is seriously ill and the current facility lacks the resources to treat him, to a standard whereby the modification may be authorized only where a prisoner is terminally ill.

On the current state of the record, defendant cannot meet his burden to prove that it is necessary that he be removed from the penal institution because he cannot be treated in prison. The present circumstances are that he is regularly seen by a neurologist, who prescribes testing procedures that are reviewed and result in recommendations that are followed by the prison medical personnel. In its opinion and order of April 17, 2009, this court, in granting defendant relief, found that the defendant was in need of a neurologist to be involved in the diagnosis and development of a treatment plan for multiple sclerosis. The court had previously found that the prison had failed to provide a neurologist to be involved in the diagnosis and development of a treatment plan and to direct further diagnostic workups which would include a spinal tap or imaging of the spinal cord and other studies to establish the diagnosis and treatment plan. The court also found that SCI Highlands was not equipped to provide

the type of specialized testing and treatment that was necessary to address the defendant's condition.

The current record establishes a change in the circumstances at SCI Highlands relative to defendant's medical care. Defendant is now seen on a regular basis by a neurologist, Dr. Grazioli, who regularly directs appropriate testing for the defendant including MRIs, other medical imaging, spinal taps, blood tests, interferon testing and other appropriate procedures and testing that relate to treatment of multiple sclerosis. There is no evidence of any other type of treatment or care that would be appropriate for the defendant's current medical situation that is not being provided for the defendant at SCI Laurel Highlands. The authorization under Act 61 to transfer the defendant to a facility outside of the prison system exists only where it is determined that the defendant cannot be treated within the prison system. Here, the court finds that defendant is receiving proper treatment within the prison system. Therefore, the court is required to deny defendant's motion for modification of sentence for medical reasons pursuant to 61 P.S. §81, which the court will do by separate order.

## ORDER

And now, January 27, 2010, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's motion for modification of sentence for medical reasons pursuant to 61 P.S. §81 is hereby denied.

The defendant is advised that he has the right of appeal from this order and that such appeal must be filed with-

in 30 days of today's date or the right to file that appeal will be lost. The defendant is further advised that he has the right to counsel relative to any such appeal and if he cannot afford counsel, counsel will be appointed to represent him at no cost to him.