J-S60034-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC ROSADO, | : | |
| | : | |
| Appellant | : | No. 3333 EDA 2015 |

Appeal from the Judgment of Sentence September 24, 2015
in the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0002264-2014

BEFORE:    SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY: STRASSBURGER, J.:          **FILED OCTOBER 21, 2016**

Eric Rosado (Appellant) appeals from the judgment of sentence entered on September 24, 2015, after he was found guilty of indecent assault, endangering the welfare of a child, corruption of minors, and unlawful contact with a minor.  We affirm.

The pertinent factual history of this case was summarized by the trial court as follows.

> On February 21, 2014, seven[-]year-old M.F. was visiting [Appellant], her step-grandfather, at his house in the Poconos. On this evening, while M.F.'s maternal grandmother, [A.Q.], and [her] brother [] were upstairs, [Appellant] asked M.F. to sit on his lap on a stool in the kitchen.  While M.F. sat on his lap, [Appellant] reached underneath her and rubbed her vaginal area through her clothes.  Immediately after she got down from [Appellant's] lap, M.F. went upstairs where she told her grandmother what had happened.  [A.Q.] confronted [Appellant] about the situation and eventually demanded that he leave the house.   [A.Q.] took M.F.  home to her mother, [T.C.], in

---

*Retired Senior Judge assigned to the Superior Court.

Delaware the next morning and, after further discussions between M.F., her mother, and her grandmother, it became apparent that this was not the only incident where [Appellant] touched M.F. in this fashion. This conduct had been occurring with frequency at [Appellant's] apartment in New York City over the preceding two years. M.F. reported the New York incidents to her grandmother after this latest occurrence because she recently watched a video in school about not keeping bad secrets.

Trial Court Opinion, 1/27/2015, at 1-2 (footnote omitted).

Following several pre-trial motions filed by both the Commonwealth and Appellant, the case proceeded to a jury trial. Appellant was found guilty of the aforementioned crimes on June 9, 2015. On September 24, 2015, Appellant received an aggregate sentence of not less than 30 months and no more than 72 months of incarceration. This timely-filed appeal followed.[1]

Appellant raises the following claims for our review.

1. Whether the trial court erred, pre-trial and during trial, when it allowed the Commonwealth to submit prior bad acts evidence of previous instances of sexual abuse of the alleged victim by [Appellant], despite the extreme, unfairly prejudicial nature of these statements and the relative lack of probative value for the charges at issue?

2. Whether the trial court erred, at trial, when it allowed the Commonwealth's expert to testify to matters outside the scope of her pre-trial proffer and where the defense did not then have a chance to rebut such testimony with an opposing expert witness or have notice to prepare for such testimony via an expert report?

3. Whether the trial court erred at trial, when it overruled defense counsel's objections to personal commentary by the Commonwealth during cross-examination of [Appellant] and

_____

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

where the trial court, in front of the jury, seriously compounded that error by going on to effectively suggest that [Appellant] was being dishonest?

4. [Whether the] trial court erred, at trial, when it refused to instruct the jury that it could consider the lack of promptness of the complaint as a factor in assessing credibility?

5. [Whether the] trial court erred, at trial, when it denied the motion for mistrial based upon the Commonwealth's attorney [*sic*] expressing a personal opinion on witness credibility during summation?

6. Whether the trial court erred as a matter of law and abused its discretion in rendering an excessive sentence, at the top of the standard range on all charges when it:

   a. improperly and unreasonably failed to consider the effects of Megan's Law registration in crafting the sentence;

   b. improperly and unreasonably considered as a sentencing factor that the criminal act evinced [*sic*] [Appellant's] threat to the community, which is true of every instance of the crime for which [Appellant] was convicted, and which is repetitive to the sentencing guidelines consideration of the crimes already?

Appellant's Brief at 8-10 (emphasis omitted).[2]

We first address Appellant's issue that the trial court erred in finding prior incidents of sexual abuse by Appellant against M.F. permissible evidence under Pa.R.E. 404(b). Appellant avers the prejudice to him caused by the introduction of this evidence outweighed the probative value.

---

[2] Included in Appellant's statement of questions involved are several issues that were raised within his concise statement of errors complained of on appeal (Concise Statement) and subsequently addressed by the trial court. Appellant now seeks to withdraw these issues. Therefore, they will not be presented herein or addressed by this Court. **See** Appellant's Brief at 8-9.

Appellant's Brief at 28. Specifically, Appellant contends "there was no actual purpose in admitting the evidence beyond accumulating a sense of outrage in the jury and encouraging judgment based upon propensity." **Id.**

In determining whether the trial court properly allowed testimony of these prior incidents, we are mindful that "[e]vidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." **Commonwealth v. Collins**, 703 A.2d 418, 422 (Pa. 1997); **see also** Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2); **see also Commonwealth v. Ross**, 57 A.3d 85, 103 (Pa. Super. 2012) (quoting **Commonwealth v. Elliott**, 700 A.2d 1243, 1249 (Pa. 1997)) ("Under Pennsylvania law, evidence of prior bad acts is admissible to prove 'a common scheme, plan or design where the crimes are so related that proof of one tends to prove the others.'"); **Commonwealth v. Dillon**, 863 A.2d 597, 601 (Pa. Super. 2004) ("In trials involving sexual assault, *res gestae* evidence [known as the "complete story" exception] is of particular importance and significance to the fact-finder. By their very nature, sexual

assault cases have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence."); **Commonwealth v. Dillon**, 925 A.2d 131, 137 (Pa. 2007) ("[Our Supreme] Court has recognized a *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime.").

In its 1925(b) opinion, the trial court offered the following analysis:

> As to the New York incidents, this case is exactly the type of case to which the *res gestae* exception is meant to apply. The evidence proffered and then submitted by the Commonwealth demonstrated that [Appellant] took advantage of his position of trust to surreptitiously touch and sexually abuse his young step-granddaughter here and in New York. The incidents of touching and abuse in New York were clearly part of a connected chain and sequence of criminal events that formed the history of this case and led to the assault that occurred in the home in the Poconos. Evidence of the New York incidents also provided context for and the complete story of the abuse charged in this case. For many of the same reasons, evidence about the incidents that occurred in New York was also admissible under the common plan or scheme exception. Specifically, the crimes committed here and those perpetrated in New York were so similar and related that proof of one tends to prove the others. Further, there is no question that the evidence was relevant. Given the facts and circumstances of this case it is equally clear that the probative value of the evidence outweighed its prejudicial effect. As the cited cases indicate, since the evidence fell under exceptions to Pa.R.E. 404(b) and was more probative than prejudicial, we were not required to sanitize the trial to eliminate all unpleasant facts from consideration. Finally, we gave required limiting instructions.
>
> Simply, [Appellant's] prior acts toward M.F. fit under the *res gestae* and common plan or scheme exceptions to Pa.R.E. 404(b), were more probative than prejudicial, and required limiting instructions were given. Accordingly, [Appellant's] complaint has no merit.

Trial Court Opinion, 11/24/2015, at 9-10 (citations omitted).

Upon review, we wholly agree with the trial court's thoughtful analysis, and conclude that the evidence allowed by the trial court was permissible under Pa.R.E. 404(b). In doing so, we disagree with Appellant that the incidents that occurred in New York provided no probative value. As aptly stated by the trial court, the prior incidents "clearly fell within the *res gestae* [and common scheme exception] in that they furnished context for the crimes charged and helped to provide the complete story of events as they showed a natural progression and development which culminated in the crime charged in this case." Trial Court Opinion, 11/24/2015, at 8. No relief is due.

Appellant also challenges the trial court's decision to permit expert testimony elicited by the Commonwealth that was outside the scope of the pre-trial proffer. As concisely summarized by the trial court:

> In the instant case, no expert report was generated as [Carol Haupt (Ms. Haupt), the Commonwealth's expert] was being called to give general testimony regarding victim behavior. Counsel for [Appellant] was well aware of this from communications he had with the assistant district attorney and from discussions and rulings during pre-trial hearings. As there was not going to be any testimony specific to M.F. or [Appellant], there was no requirement that a report be generated. In lieu of a report, [Appellant] was given transcripts of similar general victim behavior testimony given by Ms. Haupt in other cases. While the Commonwealth stated that its purpose for calling Ms. Haupt was to elicit testimony about victim delays in reporting, there was not an affirmative representation that this was the only thing this expert could testify to in regard to general victim behavior.

At trial, before the Commonwealth called Ms. Haupt, [Appellant] intentionally elicited testimony on cross-examination of M.F.'s grandmother [A.Q.] that as a teacher she was a mandatory reporter for child abuse and that she had received some child abuse training, including training on signs of child abuse. She then testified that she had never observed any signs of child abuse in M.F. When the Commonwealth called Ms. Haupt, [Appellant] objected to allowing her to testify in regard to any signs or symptoms (or lack thereof) of child abuse. [Appellant] claimed that because the Commonwealth stated, pretrial, their intention to call Ms. Haupt for testimony regarding a delay in reporting, they were not able to elicit testimony outside this narrow scope and that doing so prejudiced him.

Trial Court Opinion, 11/24/2015, at 12 (citations omitted).

Appellant argues that he was essentially "ambushed at trial" and that Appellant's "cross-examination of a lay witness was of an entirely different kind than the Commonwealth's introduction of expert testimony." Appellant's Brief at 30. Disagreeing that he had "opened the door" to this testimony, Appellant contends the court's allowance of this testimony was highly prejudicial. *Id.* at 30-31.

[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Szakal*, 50 A.3d 210, 227 (Pa. Super. 2012) (quoting

*Grady v. Frito–Lay, Inc.,* 839 A.2d 1038, 1046 (Pa. 2003)).

- 7 -

Opining that it did not err by allowing the Commonwealth to elicit the aforementioned information from its expert, the trial court offered the following.

> Because [Appellant] raised the issue in his cross-examination of M.F.'s grandmother we ruled that the Commonwealth could ask Ms. Haupt general questions regarding signs of child abuse similar to the questions asked by [Appellant] of M.F.'s grandmother. In regard to this particular issue, the Commonwealth asked Ms. Haupt two questions about general behavior and signs, or lack thereof, of sexual abuse. This testimony was in direct response to testimony elicited by [Appellant] from another witness and did not go beyond the pre-trial proffer of general victim behavior testimony. Furthermore, assuming *arguendo* this testimony did go beyond the scope of the expert testimony as indicated by the Commonwealth, [Appellant] made only a bald claim of prejudice and, in fact, there was no prejudice from the few questions asked.
>
> Given the facts and circumstances of this case, the limited nature of Ms. Haupt's testimony on the contested subject, and the fact that [Appellant], not the Commonwealth, interjected the subject, we believe that we acted well within our discretion in allowing the testimony. The evidence was relevant, responsive to questioning conducted by [Appellant's] attorney, and did not prejudice [Appellant].

Trial Court Opinion, 11/24/2015, at 12-13 (citations omitted).

Upon review, we conclude that the trial court acted within its discretion. The decision to allow Ms. Haupt to offer testimony to rebut defense counsel's questioning of M.F.'s grandmother is reasonable, not the product of "partiality, prejudice, bias or ill will." **Commonwealth v. Hoch,** 936 A.2d 515, 518 (Pa. Super. 2007) (citations omitted). Accordingly, Appellant is entitled to no relief from this Court.

Next, in addressing Appellant's issue related to the personal commentary made during cross-examination by the Commonwealth and trial court, we first set forth our standard of review.

"Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." **Commonwealth v. Miller**, 746 A.2d 592, 601–02 (Pa. 2000). Appellant takes issue with the following two interactions that occurred when he was cross-examined by the Commonwealth.

> [The Commonwealth:] Okay so when you say eight grandkids – and again you're talking [A.Q.'s] kids?
>
> [Appellant:] Yeah, because they've been the closest to me all these years.
>
> [The Commonwealth:] Okay, I just thought it was odd that you didn't mention that you have your own grandkids.
>
> [Defense Counsel:] Objection to what the district attorney thought Your Honor.
>
> [Trial Court:] Overruled.

N.T., 6/9/2015, at 39.

> [The Commonwealth:] So what's the difference then between [M.F.] sitting on your lap in the Poconos versus all the other times she sat on your lap? Why is this one time that you're so adamant that no, she never did? What's the difference?
>
> [Appellant:] I don't get it.

[The Commonwealth:]  Neither do I sir, that's why I asked the question.

[Defense Counsel:]  Judge, you know, does he have to resort to this -- those comments? He doesn't get it? I think everybody else does.

[Trial Court:]  Well we'll see if they do or not; but the point of it is that he didn't answer the question either. So you can ask him the question again.

[Defense Counsel:]  Judge, can he rephrase the question?

[Trial Court:]  I think it was an easy question to answer.

[The Commonwealth:]  I thought it was an easy question too Judge.

N.T., 6/9/2015, at 50-51.  Appellant argues that these two instances of "personal commentary," along with a third occurrence, the objection to which was sustained by the trial court, exhibit improper expressions of the prosecutor's personal opinion.  Appellant avers that, "although not explicitly stated, the meaning" of these comments, including the trial court's response to defense counsel's request to rephrase the question "was perfectly clear." Appellant's Brief at 34.  Specifically, Appellant contends "[t]he prosecutor believed [Appellant] was lying, evinced [*sic*] by the prosecutor's sarcastic string of comments.  The [trial court] and the prosecutor then demonstrated agreement that [Appellant] was evading easy questions, making it seem to the jury that the [trial court] and the prosecutor were of one mind on [Appellant's] testimony."  *Id.*  Such commentary, Appellant argues, "was

- 10 -

highly prejudicial … and would serve to form a fixed bias in the minds of the jury so as to taint the fairness and impartiality of the verdict." *Id.* at 35.

In response, the trial court concluded the issue was waived. Trial Court Opinion, 1/27/2015, at 24-25. Specifically, the trial court found it was "unable to ascertain" what Appellant was referring to[3] and Appellant's failure to "pinpoint the alleged error within the record" resulted in waiver. *Id.*

We agree with the trial court that Appellant failed to state with exact specificity what remarks in the record he was contesting. However, because we find the issue as written provided enough context to discern which parts of Appellant's testimony he was challenging, we decline to find waiver.

In reviewing the applicable portions of the transcript as set forth above, it appears Appellant only objected to one of the comments made by the prosecutor. Regardless, to the extent that Appellant properly objected to both remarks and thus preserved the issue for our review, we discern no abuse of discretion by the trial court. *See Commonwealth v. Cooper*, 941 A.2d 655, 668 (Pa. 2007) (citations omitted) ("Not every intemperate or improper remark mandates the granting of a new trial. Reversible error occurs only when the unavoidable effect of the challenged comments would

---

[3] In his Concise Statement, Appellant raised the following issue the trial court deemed waived: "The trial court erred, at trial, when it overruled defense counsel's objections to personal commentary by the Commonwealth during cross-examination with [Appellant] and where the trial court, in front of the jury, seriously compounded that error by going on to effectively suggest that [Appellant] was being dishonest." Concise Statement, 11/24/2015, at 3.

- 11 -

prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict."). No relief is due.

Next, Appellant asserts the trial court erred when it refused to issue a prompt complaint instruction to the jury.[4] Contending the instruction was essential for assessing the victim's credibility, Appellant avers the trial court's failure to issue this instruction, while allowing testimony of prior incidents (which were not reported immediately) under the *res gestae* exception was extremely prejudicial. Appellant's Brief at 38-41. Appellant notes that while the trial court denied Appellant's request for the instruction, it expressly permitted the Commonwealth "to present an expert witness that addressed the victim's delay in reporting." ***Id.*** at 38. Although acknowledging the jury was instructed about general witness credibility, Appellant argues this instruction was "insufficient and misleading to the jury on the issue of delay in reporting." ***Id.*** at 39.

> [I]n reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case.

---

[4] Initially, the trial court said it would give a prompt complaint instruction. However, upon an objection from the Commonwealth and the court's review of case law, the court declined to give the instruction. ***See.*** N.T., 6/9/2015, at 67-68, 75-81.

- 12 -

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted).

"The prompt complaint instruction is based upon a belief that a victim of a violent assault would reveal the assault occurred at the first available opportunity. [T]he purpose of the instruction is to allow a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity." *Id.* (omitted).

The trial court determined that a prompt complaint instruction was not required, largely on the basis of our Supreme Court's opinion in *Commonwealth v. Snoke*, 580 A.2d 295 (Pa. 1990).

> In *Snoke*, a five[-]year-old girl was sexually abused by her father. She did not report the abuse for five months. Similar to M.F. in this case, the child victim's report in *Snoke* was made after she watched a video in school on the difference between "good touching" and "bad touching." On appeal, the defendant-Father argued that the trial court erred by failing to give a "lack of prompt complaint" instruction. Our Supreme Court disagreed, stating:
>
> > [W]here the actual occurrence of the assault is at issue in the case, the trial judge is required to charge the jury as to the relevance of a delay in disclosure and the significance of a prompt complaint. In such an assessment the witness' understanding of the nature of the conduct is critical. Where the victim did not comprehend the offensiveness of the contact at the time of its occurrence, the absence of an immediate complaint may not legitimately be used to question whether the conduct did in fact occur.
> >
> > ***
> >
> > Where no physical force is used to accomplish the reprehensible assault, a child victim would have no

- 13 -

reason to promptly complain of the wrong-doing, particularly where the person involved is in a position of confidence. Where such an encounter is of a nature that a minor victim may not appreciate the offensive nature of the conduct, the lack of a complaint would not necessarily justify an inference of a fabrication. As the testimony reveals in this case, the child had no reason to question the character of the conduct until her subsequent viewing of a film depicting this type of conduct. It is also significant that the party involved in the behavior was her father whom she would naturally trust and accept his judgment as to the propriety of the act.... In this setting the absence of an immediate outcry would not in and of itself warrant an inference that the event was a recent fabrication and, therefore, a charge to that effect was properly denied by the trial court.

***Snoke***, 580 A.2d at 298-300.

[The trial court explained its decision to forego the instruction in this case as follows:] In this case, [Appellant] argued that M.F. did not make a prompt complaint. Specifically, he maintained that a "delay" occurred when M.F.'s mother and grandmother waited for a short period of time before contacting the police. He also pointed to the fact that M.F. did not disclose the incidents in New York until she reported the assault that occurred in this case. However, after examining case law we determined that neither aspect of [Appellant's] assertion holds water.

Having reviewed the matter again in light of this appeal, we continue to believe that our ruling was correct under the facts and the law. Initially, M.F. *did* promptly report the abuse. Specifically, immediately after the sexual assault here in the Poconos, M.F. went upstairs and told her grandmother what had happened. The next morning, after her grandmother drove her home, M.F. told her mother what had happened. Given these facts, a prompt complaint instruction was simply not warranted.

***

- 14 -

[Appellant's] assertion that M.F.'s delay in reporting the New York incidents required a lack of [prompt] complaint instruction is equally meritless in light of **Snoke**. Given M.F.'s age, the family relationship between [Appellant] and M.F., the position of trust [Appellant] enjoyed, the lack of force used to perpetrate the abuse, and the other considerations discussed above, a lack of prompt complaint instruction was not warranted based on any delay attributable to M.F. regardless of whether the assertion of delay is made in reference to New York incidents, the abuse that occurred in Pennsylvania, or both. Further, as [Appellant] points out in other arguments, he was not on trial in this case for the New York incidents, we allowed evidence of the New York incidents for limited purposes only, the jury was instructed on the limitations, and counsel for [Appellant] remained free to point out and argue the length of time between the occurrence of the New York incidents and M.F.'s reporting of the assaults. There was simply no need or requirement to give a lack of prompt complaint instruction in regard to prior acts that were admitted for only limited purposes.

Trial Court Opinion, 11/24/2015, at 18-21 (citations omitted, emphasis in original).

We find the trial court's explanation for denying Appellant's request for a prompt complaint instruction was well-reasoned and in line with our long standing case law concerning this subject. We find no abuse of discretion or misapplication of law and wholly agree with the conclusions of the trial court set forth above.[5]

---

[5] Furthermore, as correctly cited by Appellant, this Court has held that a general witness-credibility instruction is sufficient under similar circumstances when confronted with a trial court's refusal to grant a prompt complaint instruction. **See Commonwealth v. Sandusky**, 77 A.3d 663, 669 (Pa. Super. 2013) (finding the trial court's credibility instruction "provided the jury with a sufficient framework to question the victims' credibility"). **See also Commonwealth v. Snoke**, 580 A.2d 299-300 (footnotes and citations omitted) ("The trial judge in this case refused to

- 15 -

In his fifth issue, Appellant contends the trial court erred when it denied a motion for a mistrial based on comments made by the Commonwealth during summation. Specifically, Appellant takes issue with two statements, which he claims express the Commonwealth's personal opinion. First, the prosecutor commented on the negative reaction he witnessed when the victim saw Appellant unexpectedly while she was testifying via closed circuit television. N.T., 6/9/2015, at 114-16. Defense counsel objected. In response, the trial court advised counsel not to interrupt. "You can make objections later. Overruled." *Id.* 115. The second comment followed when the prosecutor stated, "I just can't wrap my mind around it," referring to Appellant's version of events. *Id.* at 120. At the end of the Commonwealth's closing, Appellant's counsel requested a mistrial based upon the aforementioned statements. *Id.* at 138-42. On appeal, Appellant contends these statements "would serve to form a fixed bias in the minds of the jury so as to taint the fairness and impartiality of the verdict." Appellant's Brief at 35.

---

instruct the jury with a charge specifically addressing the implications of a delay in making a complaint. The trial judge properly reasoned that the facts of this case did not necessitate the specific instruction on delay. The trial judge did instruct the jury thoroughly upon the general subject of credibility in accordance with the suggested instruction for witness credibility. … We believe that, under the fact of this case, this was sufficient to permit the jury to ascertain the truthfulness of the testimony offered by the minor complaining witness as well as of others who testified in this matter.")

"The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a 'flagrant abuse of discretion.'" *Commonwealth v. Manley*, 985 A.2d 256, 266–67 (Pa. Super. 2009) (citations omitted). As stated *supra* "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v. Miller*, 746 A.2d at 601–02.

> Thus, where the prosecutor breaches his duty of fairness and acts in a manner that deprives the defendant of a fair trial, a mistrial should be granted. We note, however, that the misconduct must cause prejudice to the defendant, and if the prejudice to the defendant is eliminated by subsequent curative instructions from the court, then no mistrial need be granted.

*Commonwealth v. Ashmore*, 403 A.2d 603, 604–05 (Pa. Super. 1979) (citations omitted).

> The trial court offered the following analysis.
>
> [The trial court] determined that both the Commonwealth and [Appellant] had made some personal comments in their closing[s] but that they did not overly prejudice the jury and could be cured with cautionary instructions, which we gave to the jury both before and after closing arguments.[6] A further examination of the transcript and exact language used by the prosecutor and complained of by [Appellant] does not reveal

---

[6] Following summation, the trial court re-issued the following cautionary instruction: "[R]emember that the attorneys' beliefs aren't evidence and they're not even really arguments so it's up to you to assess the facts, find the facts based on all the evidence that was presented regardless of whether it was mentioned by the attorneys or not and regardless what either of their beliefs are, and then you apply those facts to the law as I instruct you on and that's how you will reach a verdict in this case." N.T., 6/9/2015, at 146.

improper personal comments which create a deep and uncurable prejudice against [Appellant]. Rather it seems to be more along the lines of appropriate oratorical flair. The words used by the prosecutor were not improper, or, if they were, they did not create a fixed bias and hostility toward [Appellant], especially since appropriate instructions were given.

Trial Court Opinion, 11/24/2015, at 22-23 (citations omitted).

We agree with the trial court's finding that the statements were not of such a nature as to form a fixed bias or hostility towards Appellant. In reviewing the record, we found defense counsel made similar comments when referring to evidence in the case such as stating "[a]gain, things that don't make sense." N.T., 6/9/2015, at 94. "It is well-established that the prosecution is permitted to respond to arguments made by the defense." *Commonwealth v. Thomas*, 54 A.3d 332, 340 (Pa. 2012).

Furthermore, in assessing the totality of the evidence presented, we find the Commonwealth's comments concerning what he had seen and what the jury may or may not have seen as they watched M.F. testify via closed circuit television were cured by the trial court's cautionary instructions that the jury was only to consider the facts based on the evidence presented. "The jury is presumed to have followed the court's instructions." *Commonwealth v. Flor*, 998 A.2d 606, 632 (Pa. 2010).

Appellant's final issue challenges the discretionary aspects of his sentence.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

- 18 -

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

* * *

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014)

(some citations omitted).

Here, Appellant timely filed a notice of appeal. We do not have a 2119(f) statement before us, but, as the Commonwealth has not objected to

- 19 -

its absence, waiver does not apply on that basis. ***Commonwealth. v. Brougher***, 978 A.2d 373, 375 (Pa. Super. 2009).

Thus, we must consider whether Appellant preserved the issues raised in his brief by raising them in a post-sentence motion. Those two issues are that the trial court (1) "failed to consider the effects of Megan's Law registration in crafting a sentence;" and (2) "considered as a sentencing factor that the criminal act evidenced [Appellant's] threat to the community," as such is true in all cases of sex crimes against minors. Appellant's Brief at 9-10.

Appellant did not raise either of these claims at sentencing or in his motion for reconsideration of sentence. Accordingly, the issues are not preserved for our review. ***Commonwealth v. Tejada***, 107 A.3d 788, 799 (Pa. Super. 2015) (holding discretionary aspects claims not raised at sentencing or in a post-sentence motion are not subject to our review, even if raised in 1925(b) statement and addressed in the trial court's 1925(a) opinion).

Accordingly, Appellant's final issue warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/21/2016