COMMONWEALTH of Pennsylvania, Appellant

v.

Thomas DILLON, Appellee.

Superior Court of Pennsylvania.

Argued March 2, 2004.

Filed Dec. 3, 2004.

Todd M. Mosser, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Owen Larrabee, Public Defender, Philadelphia, for appellee.

Stuart B. Suss, Amicus Curiae, Norristown, Attorney General.

Before: DEL SOLE, P.J., FORD ELLIOTT, STEVENS, ORIE MELVIN, LALLY–GREEN, TODD, GANTMAN, McCAFFERY, and PANELLA, JJ.

McCAFFERY, J.

¶ 1 Appellant, the Commonwealth of Pennsylvania ("Commonwealth"), asks us to determine whether the trial court erred when it denied the Commonwealth's motion *in limine* to introduce substantive evidence of Appellee, Thomas Dillon's ("Dillon") physically abusive behavior toward the immediate family of his child sexual assault victim in its case-in-chief. Specifically, the Commonwealth asserts that it should not be required to wait for Dillon to challenge his alleged victim's credibility before being allowed to introduce specific evidence which readily explained the victim's lack of "prompt complaint". We hold that relevant evidence tending to explain any delay in reporting sexual abuse is admissible as substantive evidence in the Commonwealth's case-in-chief. Accordingly, we vacate the trial court's order and remand the case for trial.

¶ 2 The salient facts and procedural history, as summarized from the trial court's opinion [1], are as follows. In May of 2001, L.P., then 14, revealed to her mother that Dillon, her mother's ex-boyfriend, had sexually assaulted her for years while L.P., her mother and her brother, had been living with Dillon. On June 22, 2001, Dillon was arrested on charges of involuntary deviate sexual intercourse [2] and related offenses.

¶ 3 This case comes before our Court on appeal from the pre-trial denial of the Commonwealth's motion *in limine*, in which the Commonwealth sought permission to introduce "evidence of [Dillon's] other crimes, wrongs, or acts against the complainant and her family." (Commonwealth's Motion *in Limine*, filed 4/15/02, Certified Record at D-2, p. 1; Commonwealth's R.R. at 11a–21a). The trial court summarized the evidence proffered by the Commonwealth as follows:

> [T]he Commonwealth explained ... that the evidence would show how [Dillon] began to sexually abuse the victim when she was approximately nine (9) years of age. (N.T. 4/17/02 at 3). The sexual abuse rose from the level of inappropriate touching to [Dillon] performing oral sex upon the victim. *Id.* The Commonwealth further argued that the victim personally witnessed her mother, and brother, Kenny, receive several violent beatings at the hands of [Dillon]. *Id.* It was the Commonwealth's contention that the victim was physically abused less, and isolated from the other family members. By doing this, [Dillon] was compelling the victim to comply with the sexual abuse by making her fearful of receiving beatings similar to that of her

mother and brother. *Id.* The sexual abuse occurred from 1995 to 1998. In all that time, never once did the victim indicate to anyone the numerous incidents of sexual abuse until after the family finally moved away from [Dillon]. In addition, the Commonwealth intended to introduce testimony that on July 31, 1998 the victim's brother, Kenny, was admitted into St. Christopher's Hospital for a broken leg. (N.T. 4/17/02 at 12). The Commonwealth contends that testimony would further reveal that the victim stayed overnight in the hospital and Kenny revealed to her how [Dillon] intentionally broke his leg during another violent beating. *Id.* The Commonwealth explained that such evidence would go to the victim's state of mind, and [*sic*] not for the truth of the matter asserted. (N.T. 4/17/02 at 14).

(Trial Court Opinion at 2). Additional, important facts proffered by the Commonwealth were that neither L.P. nor her brother, Kenny, revealed that Dillon had intentionally broken Kenny's leg until the family had moved away from Dillon. (N.T. 4/17/02 at 5). One of the most important facts was that L.P. did not report what she had suffered at Dillon's hands until after he was convicted *and incarcerated* for breaking her brother's leg.[3] (*Id.* at 8). The main reason the Commonwealth sought to introduce evidence of Dillon's brutality towards the family and his concomitant relative leniency (in terms of physical abuse) towards the victim, was to explain the victim's terror and why she did not tell anyone about the sexual abuse. At the hearing, the Commonwealth explained:

> Ms. McCartney: Judge, the case law is very clear that prior bad acts, as long as

---

1. *See* Trial Court Opinion, filed July 22, 2002, at 1–3.

2. 18 Pa.C.S.A. § 3123.

3. Dillon was out on bail while on trial for that crime.

they're not used for the sole purpose of showing a propensity to commit crimes, can come in if there's a legal relevance to admitting them. And as I've cited in my motion, there's plenty of legal basis for admitting these incidents.

First of all, Your Honor, there's an almost four year period ... from the time [the sexual abuse] began until it was ultimately reported, and *it goes to explain lack of prompt complaint. This girl was terrorized, Your Honor.* (*Id.* at 6) (emphasis added).

¶ 4 The trial court denied the Commonwealth's motion, and the Commonwealth immediately filed an appeal in lieu of proceeding to trial, raising one issue for our review:

> DID THE LOWER COURT ERR IN LIMITING TO REBUTTAL EVIDENCE OF [DILLON'S] VIOLENT ACTS AGAINST MEMBERS OF HIS CHILD RAPE VICTIM'S FAMILY, WHERE THOSE ACTS ARE PART OF THE *RES GESTAE* OF THE OFFENSE IN THAT THEY TERRIFIED THE VICTIM AND EXPLAIN HER FAILURE TO MAKE A PROMPT COMPLAINT OF THE SEXUAL ABUSE, AND SO WERE ADMISSIBLE IN THE COMMONWEALTH'S CASE IN CHIEF?

(Commonwealth's Brief at 3).

■ ¶ 5 As a preliminary note, because the Commonwealth is appealing a pretrial order denying its motion *in limine*, its notice of appeal must contain a certification that the order will terminate or substantially handicap the prosecution. Pa. R.A.P. 311(d). *See Commonwealth v. Gordon*, 543 Pa. 513, 517, 673 A.2d 866, 868 (1996) (holding that denial of a motion *in limine* to admit evidence falls within the judicially-established rule that the Commonwealth may appeal pretrial orders which substantially handicap prosecution). Instantly, the Commonwealth did comply with this requirement[4], and the certification transforms an otherwise unappealable interlocutory order into an appealable one. Thus, we will proceed to a review of the merits.

¶ 6 On appeal, the issue is whether the trial court erred in limiting the introduction of evidence of Dillon's physical violence and abusiveness to rebuttal. The Commonwealth contends that this evidence of Dillon's physical abuse of both the victim's mother and younger brother is crucial and should be admissible in its case-in-chief as the victim's resulting fear of Dillon logically and persuasively explains her failure to promptly report her abuse. (Commonwealth's Brief at 13). We agree with the Commonwealth.

■ ¶ 7 Our standard of review over evidentiary matters is well-settled: "[t]he admission of evidence is a matter vested in the sound discretion of the trial court, whose decision thereon can only be reversed by this Court upon a showing of an abuse of discretion." *Commonwealth v. Travaglia*, 792 A.2d 1261, 1263 (Pa.Super.2002), *appeal denied*, 572 Pa. 733, 815 A.2d 633 (2002), *cert. denied*, 540 U.S. 828, 124 S.Ct. 55, 157 L.Ed.2d 52 (2003) (citation omitted). A trial court's misapplication of the law is an abuse of discretion. *See Commonwealth v. Dunlavey*, 805 A.2d 562, 564 (Pa.Super.2002). Instantly, our scope of review is limited to an examination of the trial court's stated reason for its decision to preclude the admission of the evidence in the Commonwealth's case-in-chief. *Commonwealth v. Minerd*, 562 Pa. 46, 54, 753 A.2d 225, 229 (2000).

---

4. The Commonwealth filed a timely notice of appeal on May 20, 2002, certifying that the trial court's ruling substantially hampered the prosecution of this case.

¶ 8 In assessing whether certain evidence should be admitted, the trial court must weigh the evidence and its probative value against its potential prejudicial impact. *Travaglia,* 792 A.2d at 1263. Evidence of prior bad acts generally is not admissible if offered merely to show bad character or a propensity for committing bad acts. *Commonwealth v. Barger,* 743 A.2d 477, 480 (Pa.Super.1999) (*en banc*). However, even where such evidence is prejudicial, it is axiomatic that:

> [E]vidence of other crimes may be admitted where there is a legitimate evidentiary purpose for such evidence.... Some of the exceptions recognized ... as legitimate bases for admitting [such evidence] include, but are not limited to, (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design...; (5) to establish the identity of the person charged with the commission of the crime on trial...; (6) to impeach the credibility of a defendant who testifies...; (7) *situations where a defendant's prior criminal history had been used by him to threaten and intimidate the victim*
>
> ....

*Id.* (citation omitted) (emphasis added); Pa.R.E. 404(b).

¶ 9 Furthermore, our courts have long recognized the special significance of evidence which provides jurors with the *res gestae,* or complete history, of a crime. *Commonwealth v. Paddy,* 569 Pa. 47, 70, 800 A.2d 294, 308 (2002). In that homicide trial, our Supreme Court permitted the introduction in the Commonwealth's case-in-chief of prior bad acts, even though the evidence was clearly prejudicial to the accused:

> [t]he [trial] court is not ... required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

*Id.* (citation and quotation omitted). The court reasoned that this *res gestae* evidence was necessary for the jurors to be able to evaluate properly the totality of the evidence, and further, to be able to draw accurate inferences therefrom. *Id.*

¶ 10 In trials involving sexual assault, *res gestae* evidence is of particular importance and significance to the factfinder. By their very nature, sexual assault cases have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence. *See, e.g., Minerd,* 562 Pa. at 56–57, 753 A.2d at 231.[5] "Pennsylvania law has

---

5. In *Minerd,* the appellant sodomized his two young stepdaughters, starting in 1983, when the victims were about three to four years old, and continuing until 1985, when the appellant moved out of their home. The older of the two victims disclosed the abuse in 1989, after learning about AIDS in school. This prompted the other victim to disclose. After the girls disclosed, they were given a gynecological exam which, unsurprisingly, revealed no trauma. At trial, the Commonwealth was permitted to introduce expert evidence in its case-in-chief to explain why this lack of physical trauma was not inconsistent with the victims' reports of repeated sodomy. The Supreme Court held that this testimony was "probative of the veracity of the children". 562 Pa. at 55, 753 A.2d at 230. Moreover, the Court again recognized the importance of this testimony as *res gestae,* particularly in the context of cases involving the sexual assault of young children:

> The jurors, as fact finders, are entrusted with the responsibility of evaluating the evidence and rendering a decision based on the evidence presented and the inferences deduced therefrom. In this case, the defendant was charged with sexually abusing his stepchildren. Since the children alleged that the abuse occurred several years ago, there was no recent physical evidence.

long stated that [in sexual assault cases] the credibility of the complaining witness is *always* an issue." *Commonwealth v. Bryson,* 860 A.2d 1101, 1104 (Pa.Super.2004) (*en banc*) (emphasis added). In fact, decisions in these cases frequently turn on that key factor, an assessment by the fact-finder of the victim's credibility. *Id.* Fact-finders often have no more to listen to than "he said/she said" testimony, with little to guide or verify their credibility assessment. Their difficulties only increase in the deplorably familiar scenarios where adult defendants commit their predation on young, terrified victims who are forced to reside with their abusers.

¶ 11 As a direct aid to help jurors properly to evaluate evidence in sexual assault cases, our courts have historically and rationally permitted the victim's prompt complaint to be considered as substantive evidence, in recognition that this evidence is part and parcel of the history and natural development of a sexual assault case:

> In a prosecution for rape, fresh complaints made by the alleged victim, consistent with her testimony at trial, benefit from a special evidential rule that makes evidence thereof admissible in the Commonwealth's case in chief. The rationale for this rule is best understood by reference to its background.
>
> Evidence of the alleged victim's "hue and cry" following rape has long been admissible at common law. Hue and cry is thought to follow rape like smoke follows fire. Proof of the former is circumstantial evidence of the latter. Conversely, unexplained lack of evidence of hue and cry that one might expect to

ensue from rape casts doubt on the existence of the rape itself.

> Fresh complaints of rape, undetailed, are a particular form of hue and cry that provides significant circumstantial support for the alleged victim's subsequent testimony that she was raped. Such fresh complaints are classified evidentially as prior consistent statements.
>
> The general rule is that a prior consistent statement of a witness is admissible only after the witness' testimony has been attacked, expressly or impliedly, as recent fabrication. *See Commonwealth v. Gore,* 262 Pa.Super. 540, 549–550, 396 A.2d 1302, 1306–1307 (1978). However, in the special circumstances of a rape case the testimony of a woman that she was raped is automatically vulnerable to attack by the defendant as recent fabrication in the absence of evidence of hue and cry on her part. This justifies a special evidential rule permitting introduction of her fresh complaints in the prosecution's case in chief.

*Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327, 1332 (1982) (footnote omitted). *See also Commonwealth v. O'Drain,* 829 A.2d 316, 321–322 (Pa.Super.2003) (holding evidence of prior consistent statement admissible on direct both as to prompt complaint and under tender years hearsay exception where sexual assault victim was 4 years old) and *Commonwealth v. Rodriguez,* 343 Pa.Super. 486, 495 A.2d 569, 572 (1985) (stating in a case involving sodomy of a fourteen-year-old, evidence of prompt complaint admissible in Commonwealth's case-in-chief).

■ ¶ 12 Logically it follows that lack of prompt complaint, or lack of "hue and

---

Given this passage of time, Dr. Carver's testimony was relevant to explain to the jurors the absence of physical trauma. Without such an explanation, jurors may improperly draw a negative inference against the Commonwealth, based upon a layperson's untutored assumptions, and rely upon that inference in rendering a verdict.

*Id.* at 57, 753 A.2d at 231.

cry", has also been recognized as an important and relevant factor for jurors to consider in sexual assault cases. *Commonwealth v. Lane*, 521 Pa. 390, 398, 555 A.2d 1246, 1250–1251 (1989). In *Lane*, our Supreme Court noted:

> The lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred, or whether it was a recent fabrication by the complaining witness. The untimely complaint might be made in order to protect the truly guilty party, as in the case of a child blaming an innocent third party for the wrongdoing of a parent. It might be an act of revenge against the accused prompted by dislike or by an unrelated dispute between either the minor complainant and the accused or, possibly, between the family of the minor complainant and the accused. It is also possible that the immaturity of the victim would cause the child not to appreciate the offensiveness of the encounter and the need for its prompt disclosure. Whatever the scenario, the victim's motive in making a complaint following a considerable period of silence is relevant as affecting the witness' veracity.

*Id.* (citation omitted). The *Lane* Court recognized that a sexual assault victim's failure to make a prompt complaint *automatically* raises a credibility issue. Thus, evidence which explains this delay can only be characterized as undeniably relevant. *Id. See also Bryson, supra.* Following this rationale, our Court in *Barger, supra,* specifically recognized the relevance of evidence of an appellant's prior abusive behavior where it explained the victim's failure to promptly report the appellant's sexual abuse. *Id.* at 480–481. In that case, the appellant repeatedly sexually assaulted his 15 year-old stepdaughter. The victim did not tell anyone about those

assaults until the appellant was out of the home for an extended period of time precisely because the appellant had beaten and intimidated her and her mother. The trial court permitted the Commonwealth to introduce evidence concerning this history of physical violence in its case-in-chief. On appeal, an *en banc* panel of this Court affirmed the ruling and held that in sexual assault cases, evidence which explains *lack of* prompt complaint is admissible in the Commonwealth's case-in-chief. *Id.*

■ ¶ 13 Instantly, the trial court refused to admit as substantive, direct evidence, testimony which graphically and definitively illustrated the climate of fear that compelled the victim's silence and explained why she did not reveal the sexual abuse until she was **sure** that she and her family members were safe. The trial court incorrectly interpreted *Barger* as holding that evidence of an accused's acts of physical abuse and intimidation would be admissible in the Commonwealth's case-in-chief only where consent was a defense to the crime and, therefore, was at issue in the trial. (Trial Court Opinion at 7). Because the victim was a nine year-old child and consent was therefore not an issue, the trial court opined that, under *Barger,* the Commonwealth could not introduce evidence of past physical abuse to explain lack of prompt complaint except on rebuttal, and then only if Dillon chose to raise it as an issue in his defense. (Trial Court Opinion at 6–7). This is an incorrect interpretation of *Barger.*

¶ 14 In *Barger,* our Court expressly permitted evidence of prior physical abuse and intimidation to be introduced as *substantive* evidence to guarantee that the jury would have the benefit of the full *res gestae* of the crime and to ensure that an accused could not profit from terrorizing his victim into silence. *Id.* In cases like the

one *sub judice,* the reading of *Barger* suggested by the trial court would permit the accused to control whether the jury could or would ever hear evidence as to why a terrorized sexual abuse victim did not promptly report her abuse. This is an illogical result, in light of the long and clear history justifying prompt complaint and *res gestae* evidence being admitted in sexual assault cases. It is also directly contrary to our express dictates in *Barger:*

> [O]ur failure to allow the admission of such prior abusive and intimidating acts would, in essence, grant immunity to criminals who, like [the a]ppellant here, have intimidated the victim with physical abuse. Additionally, our failure to allow admission of such evidence would prevent victims of such crimes from presenting evidence to help explain their failure in making a prompt complaint. Such a scenario would improperly give rise to an inference of insincerity from a victim because of an inability to explain any delay in reporting such activity.

*Id.* at 481.

¶ 15 Following *Barger,* we hold that evidence of Dillon's actions and/or threats against the victim's family which intimidated the victim is admissible as direct, substantive evidence in the Commonwealth's case-in-chief to explain the victim's lack of prompt complaint. Based upon the foregoing reasons, we conclude that the trial court abused its discretion by denying the Commonwealth's motion *in limine* to admit evidence of Dillon's history of abusing the victim's family as direct evidence in its case-in-chief. Accordingly, we vacate the trial court's order and remand this case for trial.

¶ 16 Order vacated; case remanded for trial. Jurisdiction relinquished.