J-S12027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JAMES KEARNS, | |
| Appellant | No. 1227 MDA 2017 |

Appeal from the Judgment of Sentence, July 6, 2017,
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s): CP-40-CR-0002837-2016.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 09, 2018**

James Kearns appeals from the judgment of sentence imposed after a jury convicted him of defiant trespass, theft and two counts of simple assault.[1]  Finding no merit to Kearns' claim that the trial court erred in admitting evidence of his other bad acts, we affirm.

The trial court summarized the pertinent facts presented at Kearns's jury trial as follows:

> After a June 4, 2016 domestic violence incident between [Kearns] and his girlfriend, Kayla Hamilton (Hamilton), [Kearns] was charged with Defiant Trespass, Theft, and two counts of Simple Assault.  The day after the incident, Hamilton gave a written statement to police in which she told police that [Kearns] came to her home at 5:00 a.m. on June 4, 2016, to spend time with the couple's son,

---

[1] 18 Pa.C.S.A. §§ 3503, 3921, and 2701, respectively.

[K.C.]. In the statement, Hamilton reported that [Kearns], using profanity, asked her to leave him alone because he was tired so she asked him several times to leave if he wasn't there to see the baby. Hamilton stated that he then began to hit her, smack her in the head and kick her. She stated that she took her phone and started to call his father to come and get him. [Kearns] snatched the phone and said, "If someone comes to the door, watch what happens." She further stated that he "grabbed a knife and threatened to cut [her] mattress. He then took her phone and keys and tried to leave. After trying to get her things back, Hamilton said that [Kearns] again hit her on the back and face and left the apartment with her belongings. According to Hamilton's statement, [Kearns] called her mother later that day to tell her he was going to return the items. Hamilton said her mother later met [Kearns], who returned the phone and car key but not the house key. On June 10, 2016, Hamilton's mother received a text message from [Kearns] reading, "I swear on everything I love, if Kayla keeps playing with me, I'm going to kill her. I don't care about cops or jail. If she continues playing games [K.C.] will be without both parents." Hamilton's mother reported the threatening text message to the police.

Although Hamilton was originally cooperating with the prosecution, prior to trial she expressed her intention to refuse to testify and to assert the Fifth Amendment. At the Commonwealth's request, she was granted immunity. At trial, when asked about the incident, Hamilton claimed that she did not remember what happened. Hamilton further testified that she may have lied about and dramatized some of the things she said in the statement.

A jury trial was held on April 25, 2017. Prior to trial, the Commonwealth sought the admissibility of the June 10, 2016 text message by filing a Motion in Limine: Commonwealth's Intention to Introduce Other Bad Acts Under Pa.R.E. 404(B). The court heard a proffer and oral argument from both parties before jury selection. Thereafter, the Commonwealth's Motion was granted subject to proper authentication.

Trial Court Opinion, 10/23/17, at 1-2 (citations omitted).

The jury convicted Kearns on all charges. On July 6, 2017, the trial court sentenced him to an aggregate term of 6 to 24 months less one day, and a consecutive one-year probationary term. **See** Sentencing Order. 7/6/17. This timely appeal follows. Both Kearns and the trial court have complied with Pa.R.A.P. 1925.

Kearns raises the following issue on appeal:

> Whether the trial court erred in granting the Commonwealth's Motion in Limine to introduce into evidence a text message allegedly sent from [Kearns] to [Hamilton's] mother when the message was not relevant for any other purpose other than to prove [his] criminal character or propensity, where the probative value of such evidence did not outweigh the unfair prejudice against [him].

Kearns' Brief at 1.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Drumheller**, 808 A.2d 893, 904 (Pa. 2002). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Harris**, 884 A.2d 920, 924 (Pa. Super. 2005).

The admissibility of other bad acts of a defendant is governed by Pennsylvania Rule of Evidence 404(b), which reads as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

\*\*\*

**(b) Crimes, Wrongs, or Other Acts.**

(1) *Prohibited uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

"[E]vidence of [other] crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004) (*en banc*). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.*** Specifically, evidence of other crimes or bad acts is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. ***Commonwealth v. Chmiel***, 889 A.2d 501 (Pa. 2005). When offered for a legitimate purpose, evidence of prior crimes or bad acts is admissible if its probative value outweighs its potential for unfair prejudice. ***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014).

The list of non-propensity uses enumerated in the rule is non-exhaustive. **See** Pa.R.E. 404(b) Comment. One use of such evidence not listed within the rule, but recognized by case law, is the *res gestae* exception. The *res gestae* exception to Rule 404(b) permits the admission of evidence when it becomes part of the history of the case and formed part of the natural development of the facts. **Commonwealth v. Solano**, 129 A.3d 1156, 1178 (Pa. 2015). This exception allows the admission of evidence of other crimes or bad acts to tell the fact-finder "the complete story." **Hairston**, 84 A.3d at 665. "Evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." **Commonwealth v. Brown**, 52 A.3d 320, 326 (Pa. Super. 2012) (citation omitted). Evidence of prior or other bad acts "may also be introduced to prove consciousness of guilt, *i.e.*, that the defendant was aware of his wrongdoing." **Commonwealth v. Ivy**, 146 A.3d 241, 251 (Pa. Super. 2016).

The trial court found no merit to Kearns' appellate claim, as it determined that the text message the Commonwealth wished to introduce into evidence had more than one non-propensity use and was not unduly prejudicial. As to the former, the court explained:

> We agree with the Commonwealth's position and therefore found that the text was not offered to prove the criminal propensity of [Kearns], but was offered as part of the *res gestae* of the crime with which [he] was charged and convicted. The threat to Hamilton's life, made by text six days after she reported [Kearns's] anger-filled incident to the police, was part of the natural development of the

facts. The admission of the text message "completes the story" of the case and explains to the jury why Hamilton, the victim in this matter, was no longer willing to voluntarily testify at the trial.

*\*\**

We find that [Kearns'] threatening to kill Hamilton in the text message was also evidence tending to prove his consciousness of guilt. The instant case has a similarity to *Ivy* in that both cases involved defendants attempting to coerce their victims into refusing to cooperate with investigations into the criminal charges against them. In this case, the text message threatening to kill Hamilton is especially important because it provides the jury, who was without the full benefit of her testimony, the context in which she refused to voluntarily testify.

Trial Court Opinion, 10/23/17, at 5-7. The trial court also agreed with the Commonwealth "that the probative value of the text message outweighs its prejudicial effect," in that "it was not so prejudicial as to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.* at 9.

In support of his issue on appeal, Kearns argues that evidence of the text message at issue "does not fall under an exception" to Rule 404(b) and "is unfairly prejudicial." Kearns' Brief at 5. He first argues that the *res gestae* exception "is only properly applied when 'the other bad acts are part of the same transaction involving the charged crime.'" *Id.* at 6 (citing *Brown*, *supra*). According to Kearns, the text message received by Hamilton's mother "was a separate incident, unrelated to the events of June

4, 2016." *Id.*[2] He further argues that, because Hamilton immediately reported to police the incident giving rise to his charges, this case is unlike ***Commonwealth v. Dillon***, 863 A.2d 597 (Pa. Super. 2004), upon which the trial court allegedly relied.

Kearns also argues that there was no evidence introduced at trial to establish that Hamilton was even aware of the contents of the text message her mother received. Indeed, he asserts that, at trial, "Hamilton acknowledged that she and [Kearns] are currently a couple, living and raising their son together. Given the situation, [Hamilton] has a vested interest in [Kearns] not going to prison. Kearns' Brief at 7.

With regard to the trial court's determination that evidence of the text message was admissible as consciousness of his guilt, Kearns argues that the court's likening the facts presented to those involved in ***Ivy***, ***supra***, was inapposite, because ***Ivy*** involved the use of a third party to threaten the victim so that she would withdraw the charges against the defendant. Because the text message in this case did not even reference the charges Hamilton filed, or demanded their withdrawal, Kearns asserts that the text message did not indicate his consciousness of guilt.

_____

[2] Kearns further emphasizes that the victim's mother characterized the text message as a separate incident. The weight to be given her testimony was exclusively for the jury as fact finder to determine.

Finally, by permitting the admission of the text message, Kearns asserts that "the Commonwealth and trial court improperly presented the jury with unduly prejudicial evidence." Kearns's Brief at 8. According to Kearns, "[t]he text message only served to show the jury [his] propensity to make threats against [Hamilton], preventing the jury from weighing the evidence in dispute fairly and impartially." *Id.*

We find no merit to Kearns's arguments. We first disagree with his characterization of the text message as a separate incident, rather than part of the "same transaction" required for admission under the *res gestae* exception. On the same day as the domestic incident, Kearns returned a majority of Hamilton's property to her mother. Hamilton's mother acknowledged at trial that she then sent Kearns a text message inquiring as to the location of the house key because it was not returned. *See* N.T., 4/25/17, at 59. Thereafter, Kearns sent the mother the text message at issue. Although Kerns made no direct demand that Hamilton to withdraw the charges within the text message, his threat that "if Kayla keeps playing me, I'm going to kill her" was a reference to the domestic incident that led to his charges. Not only does this threat "complete the story," and was therefore admissible under the *res gestae* exception, but also, as in *Ivy*, indicates Kearns' consciousness of guilt.

While the record supports Kearns' assertion that no evidence established that Hamilton knew about the text message, this omission in evidence can be explained by the fact that the jury "was deprived of the full

benefit" of Hamilton's testimony. *See* Trial Court Opinion, *supra*. One can infer Hamilton knew of the text message, which is why she refused to voluntarily testify. While Kearns opines that Hamilton's refusal to testify was because they now are living as a family, the credibility and weight given either scenario was exclusively for the jury to determine.

In addition, the fact that the text message was received six days after the initial incident that gave rise to the charges does not alter our conclusion. "Although evidence of prior occurrences which is too remote is not properly admissible[,] it is generally true that remoteness of the prior instances of hostility and strained relations affects the weight of the evidence and not its admissibility." *Commonwealth v. Ulatoski*, 371 A.2d 186, 191 (Pa. 1977) (citation and footnote omitted). However, "no rigid rule can be formulated for determining when such evidence is no longer relevant." *Id.* "What that limit of time should be must depend largely on the circumstances of each case, and ought always to be left to the discretion of the trial court." *Id.* at 191-92. Here, although the text message at issue was received six days after the original domestic incident which gave rise to the charges, it is not too remote, especially considering the mother's involvement with retrieving the victim's property taken during the incident, and her texting him after the return of the property to ask about the house key that was not returned.

Finally, we find no merit to Kearns' claim that admission of the text message was unduly prejudicial. As our Supreme Court has recently

explained, "[T]he trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand, and form part of the history and natural development of the events and offenses for which the defendant is charged." *Hairston*, 84 A.3d at 666 (citation omitted). Although, by their very nature, evidence of prior or other bad acts is prejudicial to a criminal defendant, the acts at issue in this case were not unduly prejudicial. This is especially true, when, as in this case, the trial court, as part of its final instructions to the jury, gave a cautionary instruction as to how the jury was to limit its consideration of this evidence. *See*, *e.g.*, *Commonwealth v. Claypool*, 495 A.2d 176, 179-80 (Pa. 1985) (concluding that the trial court's giving of a detailed cautionary instruction was sufficient to overcome prejudicial effect of the introduction of prior bad acts evidence). Included within its closing instructions to the jury, the trial court stated:

> In this trial you also heard evidence tending to prove that [Kearns] engaged in improper conduct for which he is not on trial. I am speaking of the testimony to the effect that [Kearns] may have sent a threatening text message. This evidence is before you for a limited purpose; that is, for the purpose of tending to show the history of this case and/or [Kearns'] intent, state of mind, motive, or absence of a mistake.
>
> This evidence must not be considered by you in any way other than for the purposes I just stated. You must not regard this evidence as showing that [Kearns] is a person of bad character or criminal tendencies, from which you might infer his guilt in this case.

- 10 -

N.T., 4/26/17, at 111. A jury is presumed to follow the trial court's instructions. ***Commonwealth v. Faurelus***, 147 A.3d 905, 915 (Pa. Super. 2016).

In sum, because the trial court did not abuse its discretion in admitting the evidence of the text message, we affirm Kearns' judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2018