J-S24029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY COULTER | : | |
| | : | |
| Appellant | : | No. 609 EDA 2018 |

Appeal from the Judgment of Sentence September 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013585-2013

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED SEPTEMBER 26, 2019**

Gregory Coulter appeals from the judgment of sentence entered following his jury-trial convictions for indecent assault of a person less than 13 years of age and endangering the welfare of a child.[1] He challenges the trial court's admission of prior bad acts evidence, its handling of the testimony of the victim's mother, and its admission into evidence of a photograph of the victim as a child. He further contends that trial court erred in denying his motion for a mistrial based on one juror's failure to disclose during *voir dire* that she was a sexual abuse victim and in refusing to dismiss a juror who was seen sleeping during the trial. We affirm.

The trial court aptly summarized the facts as follows:

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126(a)(7) and 18 Pa.C.S.A. § 4304(a)(1), respectively.

In 2001, Complainant A.J.'s mother [("Mother")] was dating [Coulter]. [A.J.] moved into [Coulter's] home at five years old, along with her mother…, younger brother, and [Coulter's] daughter. On one occasion, while [A.J.'s] mother was not home, [Coulter] bathed [A.J.] in the bathtub. [A.J.] began to feel pressure and when she looked down, [Coulter's] fingers were inside of her vagina. [A.J.] also testified that there were multiple times when she was afraid to go to sleep because [Coulter] would enter her room, wake her up, and smother her with a pillow. On one instance while [Coulter] smothered [A.J.], he fondled her vagina and her chest over her pajamas. [A.J.] never told anyone about [Coulter's] actions at the time because she was afraid of [Coulter]. Around the age of 16, [A.J.] confided in her boyfriend and disclosed the interactions with [Coulter]. Her boyfriend convinced her to tell her mother what [had] happened, which she eventually did. Afterwards, her mother took her to the Special Victims Unit to make a report.

Trial Court Opinion, filed July 20, 2018, at 2 (citations omitted).

Coulter was arrested and charged in October 2013. He went to trial in April 2015, but that trial resulted in a mistrial, as the jury was deadlocked on all charges. Coulter's second trial took place from February 2, 2017 to February 6, 2017. This time, the jury found Coulter guilty of indecent assault and endangering the welfare of a child. However, it deadlocked on the charge of aggravated indecent assault. On September 11, 2017, the court sentenced Coulter to 11 and a half to 23 months' incarceration, followed by 10 years of reporting probation. This appeal followed.

Coulter raises the following five issues on appeal:

1. Whether the court erred in allowing testimony of alleged prior bad acts that were reported in a statement given on November 14, 2014, three days prior to when trial was originally scheduled to begin and over a year subsequent to Appellant's arrest.

- 2 -

2. Whether the court erred in instructing defense counsel that the jury would determine the credibility of perjurious testimony by [Mother] while, subsequently, sustaining Commonwealth['s] objections to a line of questioning specifically crafted to explore the credibility of the perjurious testimony.

3. Whether the trial court erred in admitting into evidence a photograph of the complainant at the age of six, which only served the purpose of inflaming the jury, was highly prejudicial, and scarcely probative.

4. Whether the trial court erred in denying Appellant's motion for a mistrial based on the tainting of the jury pool by a juror who purposely withheld information of a prior sexual assault during *voir dire*, but subsequently disclosed to other jurors during deliberations.

5. Whether the court erred by not dismissing a juror who was observed sleeping during trial, during the Defense Counsel's closing arguments, and during much of the deliberations.

Appellant's Brief, at 6.

We review challenges to the admission of evidence for abuse of discretion. **Commonwealth v. Thomas**, ___ A.3d ___, 2019 WL 3926550, at *10 (Pa. Aug. 20, 2019). We likewise review challenges to the trial court's decision on whether to dismiss a juror for abuse of discretion. **Commonwealth v. Janda**, 14 A.3d 147, 163 (Pa.Super. 2011).

Coulter first contends that the trial court erred when it allowed testimony about his alleged prior bad acts. Specifically, Coulter contends that the court should not have admitted testimony from A.J.'s mother that when they lived together, Coulter broke A.J.'s brother's leg and tied A.J.'s brother's arms to his bed to prevent him from sucking his thumb. The Commonwealth

- 3 -

responds that it sought the introduction of this evidence to explain A.J.'s fear of Coulter, which contributed to her ten-year delay in reporting her abuse.

"The admission of evidence is a matter vested in the sound discretion of the trial court, whose decision thereon can only be reversed by this Court upon a showing of an abuse of discretion." ***Commonwealth v. Jones***, 683 A.2d 1181, 1193 (Pa. 1996). In assessing whether certain evidence should be admitted, "the trial court must weigh the relevance and probative value of such evidence against the prejudicial impact of that evidence." ***Id.*** "Evidence of prior bad acts generally is not admissible if offered merely to show bad character or a propensity for committing bad acts." ***Commonwealth v. Dillon***, 863 A.2d 597, 601 (Pa.Super. 2004) (*en banc*). However, such evidence may be admissible for a proper purpose:

> Some of the exceptions recognized…as legitimate bases for admitting [such evidence] include, but are not limited to, (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design…; (5) to establish the identity of the person charged with the commission of the crime on trial…; (6) to impeach the credibility of a defendant who testifies…; (7) ***situations where a defendant's prior criminal history had been used by him to threaten and intimidate the victim***….

***Id.*** (emphasis in original).

A sexual assault victim's failure to make a prompt complaint raises a credibility issue. It therefore follows that evidence that explains this delay in making a complaint is relevant. ***Id.*** at 603. Thus, evidence of a defendant's prior abusive behavior is relevant to explain the victim's failure to promptly

report sexual abuse by the defendant. *Id.* (citing ***Commonwealth v. Barger***, 743 A.2d 477, 480-481 (Pa.Super. 1999) (*en banc*)).

In the instant case, the Commonwealth moved in *limine* to admit testimony from A.J. and Mother that on several occasions while they were living in Coulter's home, Coulter physically and verbally abused A.J. and her brother. The Commonwealth stated in its motion that it offered the testimony to explain A.J.'s delay in reporting.

The trial court granted the motion but only allowed the Commonwealth to introduce evidence of incidents that A.J. actually observed, and excluded other prior bad acts of which A.J. was not aware. Namely, the court allowed evidence that A.J. was aware that Coulter allegedly threw her brother over a stair railing, causing his leg to break, and that Coulter allegedly tied her brother's arms to his bed to prevent him from sucking his thumb at night. The trial court specifically allowed this testimony in order to show why A.J. feared Coulter and to explain her lack of prompt complaint against Coulter. This evidence was relevant and properly admissible. ***Dillon***, 863 A.2d at 603-604.

Accordingly, the trial court did not abuse its discretion in allowing this testimony about Coulter's prior bad acts. Coulter's further arguments that the court ought not to have admitted this evidence because the Commonwealth obtained it on the eve of trial, it was "self-serving," and it "could never be corroborated," lack merit. Coulter's Br. at 13-14. Such arguments go to credibility and have no bearing on admissibility.

Coulter next contends that the court erred in stating that the jury would determine the credibility of Mother's allegedly perjurious testimony that she had given two written statements to police. Mother testified that in addition to giving police a written statement shortly before the first trial, she had also previously given police a written statement to the same effect. Defense counsel objected that he had never received any such statement in discovery, and the court called a recess. Defense counsel stated, "There is no written statement, she's just lying." N.T. 2/1/17, at 121. The court responded that whether the witness was credible was for the jury. The parties then reached a stipulation that Mother had only given one written statement to police, shortly before the first trial. When the trial resumed, the court advised the jury of the stipulation.

Defense counsel then returned to cross-examining Mother, and she reasserted that she had given two written statements to police. Defense counsel pressed Mother on the contradiction with the stipulation, and the court sustained several prosecution objections to aspects of defense counsel's questioning:

> [Defense Counsel]: [D]id you hear the stipulation that the Court just read?
>
> [Mother]: Yes.
>
> [Defense Counsel]: Do you understand what it means?
>
> [The Commonwealth]: Objection.
>
> The Court: Sustained.
>
> [Mother]: I believe so.

- 6 -

The Court: You don't have to answer that, ma'am.

[Defense Counsel]: I just asked you a minute ago and you told us or attempted to tell us that you gave another written statement to a detective or somebody in the Philadelphia Police Department besides the one that's in front of you, right?

[Mother]: Correct.

[Defense Counsel]: And you just heard that the government or the District Attorney's office agreed there is no such other statement. Did you hear that?

[Mother]: Yes.

[Defense Counsel]: Do you want to change your answer or do you want to stick to the fact that you say there's another statement out there?

[The Commonwealth]: Objection.

The Court: Sustained.

[Defense Counsel]: Well, you said you took [A.J.] to the police department to make the report, right?

[Mother]: Correct.

[Defense Counsel]: And that happened in January of 2013, right?

[Mother]: Correct.

[Defense Counsel]: All right. And when you took her there, you didn't give a statement at that point, right?

[Mother]: Incorrect.

[Defense Counsel]: Again, you're going back to saying you did give a written statement in January of 2013?

[Mother]: Yes.

[Defense Counsel]: Okay. And you gave that to who, Detective Duckworth?

[Mother]: Yes.

[Defense Counsel]: And she asked you questions, you provided answers and she typed it all up or wrote it up, right?

[Mother]: Yes.

[Defense Counsel]: And at the end of it she handed it over to you and had you review it, right?

[Mother]: Yes.

[Defense Counsel]: And then you signed this statement, right?

[Mother]: Yes.

[Defense Counsel]: And you're saying this is a document that exist[s] in the world?

[Mother]: I don't know.

N.T., 2/1/17, at 123-125. Detective Duckworth later testified that she spoke with Mother when Mother brought A.J. to the police department in January of 2013, but that she did not take a written statement from Mother. N.T., 2/2/17, at 79-81.

Coulter argues that the court improperly stated that credibility was for the jury, only to sustain the Commonwealth's objections to questions crafted to explore Mother's credibility. We disagree.

"It is within the province of the jury, as the finder of fact, to decide whether a witness' testimony lacks credibility." *Commonwealth v. Smith*, 861 A.2d 892, 896 (Pa. 2004). The record reflects that the trial court allowed Coulter's attorney to fully cross-examine Mother regarding her interactions with the police. Mother's credibility was an issue for the jury to decide. Thus, the court did not err in its handling of this testimony.

In his third issue raised on appeal, Coulter argues that the trial court erred in admitting into evidence a photograph of A.J. at the age of approximately five to six years old. Coulter argues that there was no dispute that A.J. was five to six years old at the time of the alleged abuse. Thus, Coulter contends that the photograph offered no probative value and was highly prejudicial. The trial court determined that the photograph was relevant to show how A.J. appeared at the time of the incidents, as she was twenty years old at the time of trial and the incidents occurred when she was five and six years old.

We recently addressed the same issue in *Commonwealth v. Vucich*, 194 A.3d 1103 (Pa.Super. 2018). In *Vucich*, the Commonwealth introduced two photographs of the victim, aged 20 at the time of trial, when he was between the ages of nine and 11 when the sexual abuse occurred. *Id.* at 1106. Similar to the present case, the victim in *Vucich* did not tell anyone about the abuse until approximately 10 years after it occurred. *Id.* Like Coulter, the appellant in *Vucich* argued that the photographs were irrelevant because the appellant did not contest that the victim was a child at the times that he testified that the abuse occurred. *Id.* at 1109. We agreed and found that the victim's childhood pictures were irrelevant. *Id.* at 1109-1110. We determined that since it was undisputed that the victim was a child when the abuse occurred, there was no need to prove to the jury what the victim looked like as a child, rendering the evidence irrelevant and thus, inadmissible. *Id.* In so doing, we specifically rejected the Commonwealth's assertion that the

evidence was relevant because the photographs were necessary to visually depict the victim's appearance at the time the crimes occurred. ***Id.*** Nevertheless, we concluded that any prejudice was *de minimis* and the error was harmless since the photographs were only referenced briefly and the Commonwealth did not revisit or otherwise draw attention to the photographs following their introduction. ***Id.*** at 1110.

As in ***Vucich***, we conclude that the photograph of A.J. in the present case was irrelevant and therefore inadmissible, but that the error was harmless. Harmless error exists where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005). "[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." ***Id.***

Like in ***Vucich***, the Commonwealth in this case only briefly referenced the photograph. The Commonwealth introduced the photograph and merely asked A.J. if it fairly showed what she looked like at the age of five. N.T., 2/2/17, at 37-38. Therefore, while the photograph was irrelevant, its use was limited and it simply depicted A.J.'s general appearance at the time of the incidents. Although the photograph was not properly admissible, we conclude

- 10 -

that any prejudicial effect was *de minimis* and would not have affected the outcome of the trial. ***Vucich***, 194 A.3d at 1110-11.

Coulter's fourth issue challenges the trial court's decision to deny his motion for a mistrial due to the alleged tainting of the jury by Juror Number 6. Juror Number 6 denied during *voir dire* that she had been sexually assaulted, only to tell other jurors during deliberations that she had been sexually assaulted as a child. N.T., 2/3/17, at 85-86. The court immediately dismissed the juror and informed her that she would face a contempt hearing. ***Id.*** at 96. The court and counsel then questioned the remaining jurors individually as to whether the juror's comments had affected their ability to be fair and impartial going forward. ***Id.*** at 89-129. Each juror stated that the comments had not influenced him or her in any way. ***Id.*** Based on the jurors' testimony, the trial court concluded that "it appeared that Juror No. 6's comment essentially was that she understood what the complainant was going through" and that the jury had not been tainted. Trial Court Opinion, filed July 20, 2018, at 5.

"[The] decision to declare a mistrial is within the sound discretion of the [trial] court and will not be reversed absent a flagrant abuse of discretion." ***Commonwealth v. Szakal***, 50 A.3d 210, 218 (Pa.Super. 2012) (quoting ***Commonwealth v. Bracey***, 831 A.2d 678, 682-83 (Pa.Super. 2003)). A mistrial is an extreme remedy that may be granted "only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." ***Id.*** (quoting ***Bracey***, 831 A.2d at 682-83).

- 11 -

Here, the foreperson brought Juror Number 6's disclosure about her sexual assault to the court's attention immediately after it occurred in deliberations. N.T., 2/3/17, at 90. As soon as the court received the foreperson's note, the court instructed the jury to stop deliberating. *Id.* at 88. After questioning Juror Number 6, the court dismissed her straightaway. *Id.* at 93-96. The court then thoroughly questioned each juror individually on the record as to whether Juror Number 6's comments had any impact on their ability to remain impartial. The court also allowed counsel on both sides to question the jurors regarding this issue. All of the jurors testified that Juror Number 6's comments had not affected them in any way. The trial court did not abuse its discretion in denying Coulter's motion for a mistrial.

Last, Coulter contends that the court erred by not dismissing a juror who was observed sleeping during the trial and deliberations. The court first observed Juror Number 2 "nodding a bit" during opening statements. N.T., 2/1/17, at 47-48. The court questioned the juror and she said that she was up all night with a baby but would be able to get through the trial. *Id.* at 48. The court and counsel agreed that she would remain on the jury but that they would keep an eye on her. *Id.* at 48-49.

The court and others next observed Juror Number 2 sleeping during a portion of defense counsel's closing argument. N.T., 2/3/17, at 34-35. The court brought Juror Number 2 into the robing room and questioned her. *Id.* The juror stated that she had taken medication for her legs but that she would remain alert for the remainder of the trial. *Id.* at 35-37. Defense counsel

argued that the court should allow the juror to remain, while the Commonwealth asserted that it should dismiss her. *Id.* at 38. The court noted that Juror Number 2 was engaged during most of the trial and allowed her to remain. *Id.* at 40. However, the court stated that if it observed her sleeping again, it would replace her with an alternate juror before deliberations. *Id.* After the Commonwealth's closing argument and the court's charge to the jury, both counsel agreed that Juror Number 2 remained alert, aside from an "occasional nod," and agreed to keep her on the jury. *Id.* at 83.

The issue of Juror Number 2 sleeping arose again when the court was questioning the jurors individually about Juror Number 6's disclosure of her sexual abuse. Several jurors stated to the court that they had observed Juror Number 2 sleeping during deliberations. One juror told the court that Juror Number 2 was sleeping because "[s]he feels like she's made up her mind and doesn't want to hear everyone talking about the same thing over and over." *Id.* at 115. Another juror surmised that Juror Number 2 "seemed intoxicated or under the influence of something." *Id.* at 129. However, that same juror stated that when Juror Number 2 spoke during deliberations, she referred to testimony and evidence from the trial. *Id.* at 130. At that point, there were no additional alternates left, as Juror Number 6 had been replaced with an alternate and another juror had been excused due to a death in her family. *Id.* at 3-4. The court decided to defer its decision regarding Juror Number 2 and readdress it after the weekend. *Id.* at 133.

When the trial reconvened the following Monday, the court decided that since Juror Number 6 was being replaced by an alternate, the jury would have to be re-charged and thus, begin deliberations anew. N.T., 2/6/17, at 3. The court decided to keep Juror Number 2, stating, "This is the time for everyone to start fresh including No. 2, to stay alert and to participate [in] the deliberations. So they are going to be instructed to begin again…." *Id.* The jury began deliberations again and returned a guilty verdict on two of the three charges against Coulter.

If the court had dismissed the juror, it would have also had to declare a mistrial, as there were no more alternates. As previously discussed, a mistrial is an extreme remedy and whether to declare one is within the discretion of the trial court. *Szakal*, 50 A.3d at 218; *see also Commonwealth v. Strunk*, 953 A.2d 577, 581 (Pa.Super. 2008) (applying abuse of discretion standard to review of decision to seat alternate juror).

Instantly, the trial court was in the best position to observe Juror Number 2's behavior and appearance. The court questioned Juror Number 2 twice and determined that she should continue to remain on the jury. Notably, defense counsel initially did not want the court to dismiss Juror Number 2, even after she was observed sleeping. Moreover, after Juror Number 6 was dismissed, the court re-charged the jury and the deliberations began anew. Thus, anything that transpired during the first deliberations was moot. Further, no jurors reported that Juror Number 2 was sleeping during the new deliberations. Accordingly, the trial court did not abuse its discretion by

- 14 -

retaining Juror Number 2. **_See Commonwealth v. Jones_**, 461 A.2d 267, 268 (Pa.Super. 1983) (finding that the trial court's denial of a motion for a mistrial was not an abuse of discretion where a juror may have "dozed" off or rested his eyes without sleeping).

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/19